UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK BAILEY,                              :
          Plaintiff,             :            CIVIL CASE NO.
                          :            3:11cv1553(JCH)
       v.                                  :
                          :
CHRISTOPHER CORBETT, et al.,              :            SEPTEMBER 3, 2013
          Defendants.            :

**RULING ON MOTION FOR SUMMARY JUDGMENT [Doc. No. 71]**

Esther Torres ("Torres") and DeShawn Billings ("Billings") (collectively, "the

defendants") are two of the three remaining defendants in this case. Torres was

warden of the correctional facility from which plaintiff Mark Bailey ("Bailey") was

released in 2010, and Billings was Bailey's probation officer. Bailey alleges in his

Amended Complaint that Torres retaliated against him for naming her in a lawsuit by

referring him late to probation, denying him gate money, repeatedly undermining the

grievance procedure, and denying him identification documents. He alleges that Billings

placed him in a homeless shelter, refused to allow him to serve his probation in Virginia,

and sought his arrest for violating probation by not obtaining employment or school

placement.

Torres and Billings have filed a Motion for Summary Judgment. For the reasons

that follow, the Motion for Summary Judgment is granted.

**I.     STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there are no issues

of material fact in dispute and the moving party is therefore entitled to judgment as a

1

matter of law.  See Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

II.     **FACTS**[1]

Prior to the incidents giving rise to this action, Bailey was serving a period of incarceration of twelve years to be followed by a five-year period of probation.   Torres was the Warden of the correctional facility in which the plaintiff was confined.  Billings is his probation officer.

When an inmate is released on probation, the inmate must comply with certain standard conditions.  One of those conditions is testing for drugs.  Another standard condition of probation is a requirement to obey all laws.  In addition, when Bailey was sentenced, the court ordered that he submit to regular drug testing and specified that one positive test would constitute a violation of probation.  The court also required that Bailey obtain employment or enroll in school.  See Doc. No. 12 at 33.

On August 11, 2010, prior to his release on probation, Bailey was referred to Alternative in the Community Transitional Housing ("AIC") for assistance in obtaining housing upon his release.  Bailey was released on probation on August 17, 2010.  At that time, AIC had no bed available for him.  As a result, Billings arranged for Bailey to

---

[1]     The facts are taken from the defendants' Local Rule 56(a) Statement and the exhibits attached to the defendants' Motion for Summary Judgment.

Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  See D. Conn. L. Civ. R. 56(a)2 & 56(a)3.

Despite receiving notice of his obligation to respond to the motion for summary judgment and the contents of a proper response, see Doc. No. 71-2, and being afforded extensions of time within which to respond, the plaintiff has not timely opposed this Motion.  Accordingly, the defendants' facts are deemed admitted.  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

stay at the St. Vincent DePaul homeless shelter until a place was available at AIC. Billings is not responsible for and has no control over the operation of the homeless shelter.

On September 23, 2010, Bailey was placed at AIC.[2]  He left AIC on September 24, 2010, and told probation staff that he wished to return to the homeless shelter.  On October 26, 2010, Bailey told Billings that he was looking into living at a sober house on Cherry Street in Waterbury.  On November 23, 2010, however, he told Billings that he had found alternative housing.  No further discussions were held about the Cherry Street house.

While Bailey was on probation, he tested positive for prohibited substances. When Billings received the positive test results, he signed an Affidavit in support of a violation of probation warrant.  The Affidavit, signed on January 3, 2011, did not refer to Bailey's inability to find employment or any housing issues.  A judge signed the warrant. Bailey, however, already was incarcerated.  He had been arrested for bank robbery on December 13, 2010.

Bailey is from Virginia.  He told Billings that he wished to return to Virginia upon his release from custody.  Probation records indicate that staff prepared an Interstate Compact Transfer package.  On August 5, 2010, Bailey told staff that he no longer

---

[2]      The Affidavit in support of the violation of probation warrant indicates that the plaintiff reported to AIC on September 23, 2010, see Doc. No. 71-6 at 4; however, Billing's Affidavit, attached to his Motion for Summary Judgment, states that Bailey was placed at AIC on August 23, 2010, see Doc. No. 71-5 at 3, ¶ 8. Both the Affidavit attached to the violation of probation warrant and Billings' Affidavit in support of his Motion for Summary judgment state that, on September 24, 2010, Bailey informed probation staff that he was unable to commit to the rules at AIC and that he felt stressed and locked up there. See id; see also Doc. No. 71-6 at 4.  The court concludes, based on the timeline of events set forth in the Affidavit attached to the warrant, that Bailey reported to AIC on September 23, not August 23.  However, whether the placement was August 23 or September 23 is not dispositive of the pending Motion.

intended to return to Virginia.  The following day, the transfer package was withdrawn. In late October 2010, Bailey asked Billings if he could visit his family in Virginia.  Billings denied the request because Bailey was in violation of probation because of a positive urinalysis from October 19, 2010.

Bailey alleges that he was not provided proper identification upon release to probation.  The identification issue relates to the fact that Bailey changed his name while incarcerated.  Bailey never asked Billings for assistance obtaining identification documents.  Torres did not give Bailey gate money when he left the correctional facility. He was not eligible for gate money because he was released to probation, not unconditionally discharged.

## III.   DISCUSSION

   A.   Claims against Torres

The plaintiff alleges that Torres took various actions in retaliation for being named as a defendant in a prior lawsuit.   She allegedly referred him to probation late, thereby denying housing placement; denied him gate money; repeatedly undermined the grievance process; and denied him identification documents.

Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, the plaintiff must show that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000).  Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  See Flaherty v.

5

Coughlin, 713 F.2d 10, 13 (2d Cir. 2003).  To support a claim of retaliation, the allegedly

retaliatory conduct must deter a similarly situated inmate of ordinary resolve from

exercising his constitutional rights.  See Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.

2004).  Any lesser conduct is de minimis and does not support a retaliation claim.

 The plaintiff states that Torres was named as a defendant in a 2010 case and

concludes that all actions taken by her after that case was filed were retaliatory.  Filing

and prosecuting a lawsuit is a protected constitutional activity.  See Bennett v. Goord,

343 F.3d 133, 137 (2d Cir. 2002).  To assert a cognizable retaliation claim, however, the

plaintiff must present evidence demonstrating a causal connection between the alleged

retaliatory actions and naming Torres in his lawsuit.  See Hartman v. Moore, 547 U.S.

250, 259 (2006) (noting that "plaintiff must show a causal connection between a

defendant's retaliatory animus and subsequent injury in any sort of retaliation action").

Bailey alleges no such facts in the Amended Complaint and has provided no evidence

in response to the Motion for Summary Judgment to support a finding by a reasonable

juror of such a causal connection.  Absent any evidence, Bailey's retaliation claim fails.

 B. Claims against Billings

 Bailey alleges that Billings placed him in a homeless shelter, refused to allow him

to serve his probation in Virginia, and sought his arrest for violating probation by not

obtaining employment or school placement.  Billings argues that all three claims are

without merit.

 1. Placement in St. Vincent DePaul Homeless Shelter

 Bailey claims that Billings placed him in the St. Vincent DePaul homeless shelter

where he was housed in a dormitory setting which exacerbated his mental health

symptoms and where a bedbug infestation caused him to experience sleep deprivation. Bailey claims that Billings would not remedy the housing situation for over a month.  He also claims that Billings prohibited his placement in the Cherry Street program.

The defendants argue that Bailey has failed to come forward with evidence that Billings was involved in these claims.  To recover damages in a civil rights action, the plaintiff must show that the defendant was directly responsible for violating his constitutional rights.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Billings states that he is not connected with or responsible for the conditions in the St. Vincent DePaul shelter.  See Billings Aff. (Doc. No. 71-3) at ¶ 5.  Bailey has provided no contrary evidence.  Thus, there is no factual basis for a jury to find Billings liable in connection with the conditions at the shelter.

In addition, Bailey's allegation that Billings did not address his complaints for over a month also lacks a factual basis.  Bailey was referred to AIC for assistance with housing needs on August 11, 2010, six days before his release on probation.  Although there was no bed available at AIC on August 17, 2010, when Bailey was released on probation, a bed became available six days later.  See Billings Aff. at ¶¶ 4-6.  Further, even if Bailey's allegation were true, he does not have a constitutional right to housing when released on probation.  Therefore his claim that the housing offered did not meet his specifications fails.  See Brown-El v. Murphy, No. 1:11cv757(TSE/JFA), 2011 WL 8879267, at *2 (E.D. Va. Sept. 19, 2011) (dismissing complaint for failure to state a claim because "a prisoner has no constitutional right to be provided with housing when he is released from incarceration or placed on probation"), aff'd 460 F. App'x 202 (4th Cir. 2011) (per curiam).

Finally, Bailey claims that Billings prevented his placement in the Cherry Street program.  Again, Bailey has come forward with no evidence to support his claim. Further, the court can identify no constitutionally protected right to participate in a particular program.  See Mele v. Hill Health Center, 609 F. Supp. 2d 248, 259 (D. Conn. 2009) (participant in state court Drug Intervention Program, an alternative to incarceration, has no constitutional right to participate in a rehabilitation program).

        2.        Transfer of Probation to Virginia

Bailey claims that he was not permitted to return to Virginia to serve his probationary period.  The defendants argue that there is no factual or legal basis for this claim.

Billings stated that a transfer package was withdrawn when Bailey told staff members that he did not intend to return to Virginia.  Bailey has not provided any evidence to contradict this statement.

In addition, Bailey has no constitutionally protected right to serve his probationary period in another state.  The Fourteenth Amendment protects individuals from the deprivation of liberty without being afforded due process of law.  To establish a due process claim, Bailey must show both that he had a protected liberty interest and that he was deprived of that interest without being afforded the required process.  Bailey can show that he had a protected liberty interest by identifying a statute or regulation by which the state created such a liberty interest and showing that his resulting confinement imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life.   See Alston v. Cahill, No. 3:07-CV-473(RNC), 2012 WL 3288923, at *3 (D. Conn. Aug. 10, 2012).

Connecticut participates in the Interstate Compact for Adult Offender Supervision.  See State v. McGovern, No. 050341156, 2007 WL 2363718, at *2 (Conn. Super. Ct. Aug. 1, 2007).  Article I of the compact provides that "there is no right of any offender to live in another state."  Conn. Gen. Stat. § 54-133.  Thus, Bailey had no liberty interest under state law to serve his probation in Virginia.  Absent this interest, he has no cognizable due process claim.

### 3.    Violation of Probation

Bailey contends that Billings violated his constitutional rights by seeking his arrest for violation of probation because Bailey did not obtain employment or enroll in school.  In support of the Motion for Summary Judgment, the defendants have provided a copy of the arrest warrant affidavit.  See Doc. No. 71-6.  In the affidavit, Billings states that Bailey violated the conditions of his probation because he had one positive urinalysis test result and violated criminal laws.  Id. at 6.  There is no reference to lack of a job.  Accordingly, there is no factual basis for this claim.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment, filed by Torres and Billings [**Doc. No. 71**], is **GRANTED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of September, 2013

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge